UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JE'MEL ENNIS,
Personal Representative of Jerome Davis,

Plaintiff,

v.

DISTRICT OF COLUMBIA, *et al.*,

Defendants.

Civil Action No. 15-1497 (JEB)

**MEMORANDUM OPINION**

This lawsuit challenges the Metropolitan Police Department's reliance on its officers' "training and experience" when establishing probable cause for search warrants for the homes of drug dealers arrested on the street.  Plaintiff asserts that officers' actual experience shows that they most often do not find the drugs or paraphernalia they seek in these suspects' homes; as a result, their affidavits in support of these warrants constitute deliberate misrepresentations.

In this case, officers allegedly ransacked the apartment of the late Jerome Davis — now represented by his estate's personal representative, Plaintiff Je'mel Ennis — after arresting another man for a heroin charge.  Davis sued the officers and the District under 42 U.S.C. § 1983.  In a prior Memorandum Opinion, the Court dismissed some of the counts against certain officers, but left the suit largely intact.  See Davis v. Dist. of Columbia, No. 15-1497, 2016 WL 199403, at *10 (D.D.C. Jan. 15, 2016).  Defendants again move to dismiss, this time arguing that the officers are protected by qualified immunity.  As the Court disagrees, it will allow the case to proceed.

1

I.  **Background**

At this juncture of the proceedings, the Court must accept as true the facts as alleged in the Amended Complaint. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted). As such facts were previously set forth in detail in its prior Opinion, the Court only briefly recounts those necessary to the resolution of the present Motion.

After making a street arrest of a man named Steven Williams for possession with intent to distribute heroin, MPD officers decided to search what they erroneously believed to be his residence. See Am. Compl., ¶¶ 1–3, 16. In an affidavit in support of a search-warrant application, MPD Officer Jerry Afari described the events surrounding Williams's arrest and asserted that, based on his training, experience, and participation in drug investigations, he knew that "individuals who deal in illegal controlled substances" store in their homes items related to drug transactions, including financial, phone, travel, and sales records; photos of illegal contraband; and cash and proceeds from drug sales. See Compl., Exh. 2 (Search Warrant) at 2–3. The warrant, approved by D.C. Superior Court Judge John Bayly, authorized the police to search 27 O Street NW for drugs; processing materials, including items such as scales and cutting tools; cash containers; safes; records of drug transactions; and electronic devices, including computers and phones. Id. at 1. During the execution of the search, Afari and his fellow officers allegedly shredded Davis's mattress and Lay-Z Boy chair and emptied boxes of frozen food into the sink, causing it to spoil. See Am. Compl., ¶¶ 50–54. The officers also seized Davis's computer. Id., ¶ 56.

Plaintiff then brought this action against the District of Columbia, Afari, and other unnamed officers under 42 U.S.C. § 1983, asserting several violations of his constitutional rights. Count I alleges that Afari and the other officers violated Davis's Fourth Amendment

rights when they relied on a warrant clearly lacking in probable cause to search his home. Id., ¶ 58. Count II claims that Afari also violated the Fourth Amendment when he knowingly made misrepresentations in the affidavit supporting the warrant. Id., ¶ 60. Count III seeks to hold the District of Columbia liable for the officers' constitutional violations, claiming that they resulted from the city's systemic failure to properly train and supervise its police. Id., ¶ 62. Finally, Count IV alleges that Afari and the other officers violated the Fourth Amendment when they caused excessive damage to Davis's home and seized his computer, thereby exceeding the scope of the warrant. Id., ¶ 64.

Defendants previously moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing that Davis had failed to articulate facts that rose to the level of constitutional violations. See First MTD (ECF No. 4) at 1. The Court largely denied that motion. More specifically, because the Complaint alleged that Afari knowingly secured the search warrant based on false information, the Court allowed Count II (false warrant application) and Count I (reliance on improper warrant) to survive against him. Davis, 2016 WL 199403, at *3–5. The Court found, however, that the other officers could have reasonably relied on the warrant and dismissed Count I as to them. Id. at *6–8. Next, the Court decided that the Complaint alleged facts sufficient to make out a claim of municipal liability and thus allowed Count III to proceed against the District. Id. at *8–9. The Court also concluded that Count IV sufficiently pled that the officers unreasonably exceeded the scope of the warrant by destroying Davis's property. Id. at *9–10. Finally, using the same logic as in prior counts, the Court determined that Count IV's seizing-of-computer claim would survive against Afari only. Id. at *9.

What remains after that Opinion are Counts I and II as to Afari alone, Count III as to the District, and Count IV as to both Afari and the other officers who executed the search. Id. at *10.

Plaintiff has since amended his Complaint to identify those unnamed officers. See Am. Compl. at 1. Afari and his colleagues now move a second time to dismiss Counts I, II, and IV, asserting that they are shielded from suit by qualified immunity.

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005). The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). For a plaintiff to survive a 12(b)(6) motion even if

"recovery is very remote and unlikely," moreover, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

In evaluating the sufficiency of Plaintiff's Complaint under Rule 12(b)(6), the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). The Court may thus consider those materials on a motion to dismiss without treating the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see also Marshall v. Honeywell Tech. Solutions, Inc., 536 F. Supp. 2d 59, 65 (D.D.C. 2008).

### III.   Analysis

In moving to dismiss a second time, Defendants maintain that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. Al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). A government official is entitled to qualified immunity unless (1) the official's conduct violated the constitution, and (2) the constitutional right involved was sufficiently established such that a reasonable person would have known that his conduct violated the constitution. Pearson, 555 U.S. at 231 (citing Harlow, 457 U.S. at 818). "The dispositive

inquiry . . . is whether it would have been clear to a reasonable officer . . . that their conduct was unlawful in the situation they confronted." Wood v. Moss, 134 S. Ct. 2056, 2067 (2014) (internal quotations and alterations omitted).

Although Defendants frame their arguments in terms of qualified immunity, they largely seek to relitigate whether Plaintiff has sufficiently alleged constitutional violations; they do not more than cursorily contend that the rights at issue are not clearly established. Afari, for instance, argues that probable cause supported his warrant application even shorn of the alleged misrepresentations; as such, neither the application itself nor his reliance on the approved warrant violated the Fourth Amendment. See MTD at 7–10. All of the officers argue, moreover, that their execution of the warrant did not run afoul of the Fourth Amendment because the damage to Davis's property was reasonable in light of the scope of the search. Id. at 11–13. The Court's analysis will move in chronological order, first addressing the search-warrant application (Count II), then proceeding to Afari's reliance on the warrant (Count I), next moving to the manner in which the officers executed the search (Count IV), and concluding with a brief discussion of the parties' remaining contentions.

    A. Count II: Warrant Application

Count II challenges the veracity of Afari's affidavit supporting the warrant, disputing his statements that his training and experience have taught him that individuals like Williams who "deal in illegal controlled substances" are likely to keep drugs and other evidence in their homes. See Search Warrant at 3; Am. Compl., ¶¶ 59–60. Plaintiff claims that, in fact, searches of low-level drug dealers' homes typically fail to produce the evidence sought by police. See Am. Compl., ¶ 38. He cites statistics showing that police searches in which probable cause is based on "training and experience" find drugs at a rate no higher than what one would expect of a

random search of D.C. homes, based on general rates of drug use. Id., ¶¶ 39–42. Plaintiff also asserts that broad "training and experience" statements regarding drug dealers are misleading, given that the police know that the habits of different levels of drug dealers vary, and the habits that Afari described in the affidavit do not apply to low-level dealers like Williams. Id., ¶ 44. Count II thus alleges that Afari knowingly or recklessly included this misinformation in the affidavit and omitted the truth — namely, that training and experience teaches police that they are generally unlikely to find drugs or paraphernalia in the homes of drug dealers like Williams. Id., ¶¶ 59–60.

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. This mandate is violated when an officer "knowingly and intentionally, or with reckless disregard for the truth" includes material false statements in the affidavit supporting a warrant to search an individual's property. Franks v. Delaware, 438 U.S. 154, 155 (1978). The same is true when an officer omits material information from the affidavit. See United States v. Johnson, 696 F.2d 115, 126 n.21 (D.C. Cir. 1982) (noting that reasoning of Franks logically applies to material omissions). If, however, the false information is not necessary to a finding of probable cause, "the inaccuracies are irrelevant." Franks, 438 U.S. at 188 n.8. Similarly, an omission is material only if inclusion of the information would defeat probable cause. United States v. Spencer, 530 F.3d 1003, 1007 (D.C. Cir. 2008). The rule against false material statements and omissions is clearly established, meaning that if a plaintiff can show that an intentionally or recklessly false statement or omission is determinative of probable cause, the officer will not be protected by qualified immunity. See Burke v. Town of Walpole, 405 F.3d 66, 88 (1st Cir. 2005); Holmes v. Kucynda, 321 F.3d 1069, 1084 (11th Cir. 2003); Clanton v. Cooper, 129 F.3d 1147, 1154–1155 (10th Cir. 1997).

"The Supreme Court has described the task of evaluating probable cause as 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Cardoza, 713 F.3d 656, 659 (D.C. Cir. 2013) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978); see also United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993) (noting that probable-cause inquiry focuses not on defendant but on whether place to be searched will turn up items sought).

Plaintiff has alleged that Afari's training and experience had taught him that drugs and other evidence are rarely found in low-level drug dealers' homes. He claims that Afari omitted this information from the affidavit and instead stated the very opposite — namely, that his training and experience indicate that evidence is often found in these homes. To determine whether independent probable cause existed in Afari's affidavit, the Court must evaluate it without the allegedly false statements, see Cardoza, 713 F.3d at 659, and with the omitted statements. Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000); United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000). The hypothetical affidavit, accordingly, would contain the following relevant facts: Williams was caught with Suboxone pills and several small bags of heroin; he provided his address as 27 O Street NW, and this was confirmed by the MPD's JUSTIS database and Pretrial Services; and a search of a low-level drug dealer's home is unlikely to turn up drug paraphernalia or other evidence and no more likely than a random search to find drugs. See Search Warrant at 3–4; Am. Compl., ¶¶ 38–43.

The reconstructed affidavit makes clear the centrality of Afari's statements regarding his training and experience. While the affidavit properly links 27 O Street with Williams, only the alleged misrepresentations substantially link the drugs or paraphernalia sought to that address. Although the D.C. Circuit has held that observations of illegal activity outside the home "can support a finding of probable cause to issue a search warrant for the residence," that is so only "if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence." United States v. Thomas, 989 F.2d 1252, 1255 (D.C. Cir. 1993). The reconstructed affidavit, however, suggests that drugs or paraphernalia would probably <u>not</u> be found at 27 O Street. Because Afari's "training and experience" statement alone created the "reasonable basis" required by Thomas, excising that statement and replacing it with the alleged omission defeats probable cause. As such, Count II articulates a violation of the Fourth Amendment's clearly established warrant requirement, and Afari is not entitled to qualified immunity at this stage.

    B.  Count I: Reliance on Warrant

In Count I, Plaintiff seeks to hold Afari liable for relying on the signed warrant in carrying out the search. See Am. Compl., ¶¶ 59–60. When acting pursuant to a warrant, officers are expected to exercise "reasonable professional judgment" to avoid performing unconstitutional searches. Malley, 475 U.S. at 346. Even if a search is ultimately found to be unconstitutional, however, an officer will not be liable if he reasonably believed the search to be lawful. Anderson v. Creighton, 483 U.S. 635, 641 (1987). If, on the other hand, an officer executes a warrant that is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable," he is not entitled to qualified immunity. Malley, 475 U.S. at 344–45 (1986) (citing United States v. Leon, 468 U.S. 897, 923 (1984)).

Because Afari himself allegedly made misrepresentations in the affidavit, he cannot simply rely on the judge's finding of probable cause to justify the search. See Groh v. Ramirez, 540 U.S. 551, 564 (2004). As in Count II, *supra*, the Court must evaluate Afari's decision to execute the search based on a reconstructed warrant that excludes false statements and includes alleged omissions. See Cardoza, 713 F.3d at 659. As just discussed, the reconstructed warrant fails to establish probable cause that evidence would be found at 27 O Street and indeed suggests that the items sought would likely not be found there. It would be unreasonable for an officer to rely on a warrant that fails to establish any connection between the place to be searched and the items sought, see United States v. McPhearson, 469 F.3d 518, 526 (6th Cir. 2006), and that on its face contains statements refuting such a connection. In addition, as set forth above, such law is clearly established. Afari is thus not now protected by qualified immunity on Count I either.

C.  Count IV: Execution of Search

Count IV alleges that the officers exceeded the scope of the search warrant when they shredded Davis's mattress and Lay-Z Boy and ruined his frozen food, and that Afari was not authorized to seize Davis's computer. See Am. Compl., ¶¶ 63–64. The officers maintain that their execution of the search was reasonable, and that they are thus shielded from suit by qualified immunity. See MTD at 11–13.

Damage to property may sometimes result from an appropriate execution of a search and does not in every case violate the Fourth Amendment. See Dalia v. United States, 441 U.S. 238, 258 (1979). It is, however, a "longstanding requirement" that the officers performing a search avoid unnecessary damage. Tarpley v. Greene, 684 F.2d 1, 9 (D.C. Cir. 1982) (emphasis added). A search can violate the Fourth Amendment if the damage inflicted was not reasonably necessary to effective execution of the search. Id. "Whether a search is unreasonable by virtue

of its intolerable intensity and scope must be determined by the particular facts of the case, including the scope of the search authorized by the warrant." Id. (internal citations and quotations omitted).

In its prior Opinion, the Court held that Plaintiff "has stated a claim that the MPD officers' search unreasonably exceeded the scope of the warrant, in contravention of the Fourth Amendment." Davis, 2016 WL 199403, at *10. The Court also concluded that because it was unreasonable for Afari to rely on the warrant in executing the search, he could not seize Davis's computer. Id. at *9. There is no need to relitigate these issues here. Although Defendants make a fleeting half-sentence reference in their main brief to the question of whether the right at issue was clearly established, see MTD at 13, they never argue that the type of destruction of property alleged here has not previously been proscribed. As noted above, the D.C. Circuit as far back as 1982 recognized the prohibition on unnecessary damage to a defendant's property as "longstanding." Tarpley, 684 F.2d at 9; see also Lawmaster v. Ward, 125 F.3d 1341, 1351 (10th Cir. 1997) (Fourth Amendment rule against unnecessary damage during search is clearly established for purposes of qualified immunity). Because, as pled, the officers' execution of the warrant was objectively unreasonable, the Complaint does state a violation of a clearly established constitutional right, and the officers are not protected by qualified immunity on Count IV.

D. Remaining Contentions

The Court previously held that the officers who assisted Afari in executing the search reasonably relied on the judicially approved warrant and thus dismissed Count I as to them. See Davis, 2016 WL 199403, at *6–8. Since then, Plaintiff has amended his Complaint to specifically name the officers who executed the search. See Am. Compl. at 1. In light of this

11

amendment, Defendants now ask the Court to recognize qualified immunity as to Count I for the specific named officers.  See MTD at 11.  The amendment, however, does not affect the Court's prior ruling; Count I has already been dismissed as to these eight officers.  Defendants' request is thus moot.  To the extent that Plaintiff is attempting to raise for a second time the question of these officers' liability for Count I, see Opp. at 15–17, this door has already been closed.

**IV.     Conclusion**

As Defendants are not entitled to qualified immunity at this stage based on the allegations in the Amended Complaint, the Court will deny the Motion to Dismiss.  An Order to that effect will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  May 31, 2016